A written disposition shall issue. Will the clerk please call the next case? 5-16-8-0-0-7-7, Robert Weir v. Workers' Comp'n Compensation. Is your case going to be interesting this afternoon? I certainly hope so. Maybe not as interesting as a school accident case or overweight drivers and vehicles, but I found it to be an interesting case even though I didn't try it. May it please the Court, Mr. Powers. My name is Mary Massa, and I represent the petitioner-appellant Robert Weir. In this particular case, Your Honor, Your Honors know that the arbitrator found a compensable case or claim on my client's part, but the Commission reversed that decision, ruling against my client based on causation, proof of causation, finding that the treating surgeon, Dr. Justin Brown's opinions in support of their being in causal connection between the July 18, 2008 work accident and the need for the surgery which Dr. Brown performed two years later was speculative, and also found as a corollary that the expert opinion testimony of Dr. Chabot, who was a Section 12 examiner, that his expert opinion testimony was more persuasive. It's our position in this case that the Commission's decisions on both of those grounds are against the manifest weight of the evidence, but they're also contrary to the legal standard with regard to proof of causation in a workers' compensation case. That was an isolated reference to Dr. Chabot's report, wasn't it, the prevailing factor of notation? I think if you look at the Section 12 report, the IME report, Dr. Chabot was asked by the respondent or the respondent's insurance company to make particular findings. And in fact, Dr. Chabot had his findings on the last page preceded with the question that was posed to him, the question being, in your opinion, was the accident that resulted in the surgery causally connected or was that accident causally connected to the need for that surgery? And it was in response to that question that Dr. Chabot said that, in his opinion, the prevailing factor, which ultimately required surgical intervention, was the preexisting lumbar spinal stenosis. Did Dr. Chabot say in his deposition that the work injury was neither a cause nor a contributing factor of this need for treatment? I believe his testimony was that the sole need for the surgery was the preexisting lumbar stenosis. Rather than the work injury. Exactly, yes, Your Honor. And in a preexisting condition case, the CISPRO case discusses this, and they say when you have a preexisting condition, the commission needs to make a determination of whether that preexisting condition, or the degenerative process of that preexisting condition, was the sole cause of the petitioner's condition of well-being, or whether, in fact, the work injury played a part in aggravating that preexisting condition. And then the court said, it doesn't have to be the sole cause, it doesn't have to be the primary cause, all it has to be is a causal factor. And in my opinion, Your Honor, I believe Dr. Brown's testimony, as read as a whole, not in bites that the commission cited in their opinion, his testimony as a whole, I believe, supports a conclusion that that accident and the injuries he sustained in that accident started the process in motion, because this is strictly a chain of events. Well, let's look at Dr. Brown's testimony, though. During his deposition, is this true, Dr. Brown stated, we could conjecture, Mr. Doctor, that the work accident could have contributed to or maybe accelerated the degenerative process. Does that sound like an affirmative opinion you can really hang your hat in? Doesn't that sound like speculation? Well, I know that there are cases, there are many cases that say, with regard to speculativeness of expert opinion, that an opinion that it might have or could have does not render that opinion speculative. But he says we could conjecture that maybe it did? As I said before, Your Honor, I believe if you read... It's a split hair, but it doesn't sound like... What Dr. Brown said was that the lumbar sacral strain that he suffered in this accident, those types of injuries cause a person to be predisposed to further lumbar sacral strains. And in particular, and both Dr. Chabot and Dr. Brown were in agreement with this, in particular with work activities such as my client had repairing heavy equipment for the respondent for some 30 years. And the fact that his job duties required bending, squatting, and lifting. Those types of activities constrain the back. But the most telling part of this, and what I think takes Dr. Brown's testimony out of the range of speculativeness, is the history in this case. My client worked for 30 years as a mechanic, doing this kind of work that involved lifting, bending, and squatting. There is not one iota of evidence, testimony, or medical records in this case, that indicated that prior to July 18, 2008, my client had any history of back problems. There's no medical records that were introduced at trial, prior medical records. There are no work comp claims involving a back injury that my client had prior to this point in time. There were no work restrictions that... There's no evidence of a pre-existing degenerative process? Is that what you're saying? No, Your Honor. I'm saying there's no evidence that my client was symptomatic due to that back stenosis, pre-existing lumbar stenosis condition, prior to July 18, 2008. I think by Brown's testimony, you have something certainly you can point to that supports your case, okay? But again, with Chabot's opinions, which the Commission apparently adopted, Chabot testified that the claimant's medical treatment after September 30, 2008, was related to an ongoing degenerative condition rather than to a work injury. So why couldn't the Commission have adopted that viewpoint? Because, Your Honor, Dr. Chabot's opinions are shaded, perhaps, based upon an improper legal standard on causation. In Missouri, it is. So it's the prevailing... It's the prevailing, and the definition of that is of primary cause. But what I'm saying is, that shaded his opinion, testimony, because he was looking at a cause that was a primary cause. He was looking at the lumbar stenosis as being the primary cause of my client's condition that led to the surgery. He totally disregarded any evidence that my client never went back to baseline in this case. And Mr. Powers isn't going to indicate that he never testified that it was not a cause or a contributing cause? I don't believe that there was any discussion or opinions with regard to whether it was a contributory cause, because it was Dr. Chabot's opinion that that was the sole cause. Okay. So that's another way of putting it. It's just flipping it 180 degrees, but if he says that something else was the sole cause, that's tantamount to saying that the work injury was not a cause. And I think... Would you agree with that? Well, I'm not sure if I'm answering your question correctly, Your Honor, but I think if you look at what Dr. Chabot's opinions were, he was of the opinion that my client may have had a lumbar strain, but he recovered from that within a short period of time following the initial accident. In fact, my client was released to return to work six weeks after the accident and was discharged from treatment at the company doctor, Midwest Occupational Medicine, some six weeks after that. My client's condition, though, in terms of back pain and leg pain, did not end when he was discharged or when he went back to full-duty, no restrictions. His condition progressed, and that, I don't think, can be ignored based on chain of events, especially when we have a claimant such as Mr. Weir, who had no prior history of back strains. If he had, then there would be, I think, more credence to the belief that this was just a temporary aggravation and that the preexisting condition was the sole cause, as Dr. Chabot testified. Before we get too far away from or removed in time from your discussion, Dr. Brown's testimony and the Commission's determination that it was speculative, you write in your brief that workers' compensation cases are unlike civil cases where there is a requirement that in order to establish causation, the plaintiff established that more likely than not, or at least 51 percent likelihood, that the accident caused the injury. You also added that in workers' compensation cases, it is not required that the physician testify or opine to a reasonable degree of medical certainty. I'm just going to point out to you the case of Cook County v. Industrial Commission, 68 Illinois 2nd, 24. I believe if you review that case, it leads to the conclusion that even when a physician were to testify as to whether or not an accident might have or could have caused an injury, it still must be based upon a reasonable degree of medical certainty. Your Honor, there are earlier cases, and the civil case that Mr. Powers pointed out in his brief was a 2nd District case from 1987. There is a more recent case, and it was also from the 5th District, which is where we are arising from in this particular case, also a civil case, an FVLA case, Hahn v. Union Pacific. And in that case, the employer, Railroad, argued that the expert opinions that the employee's doctors testified to were not based upon a reasonable degree of medical certainty and therefore should not have been permitted to be used as evidence in trial. But the appellate court, the 5th District appellate court, rejected that statement and said that there is no magic to that phrase. Counsel, I'm not talking about an FVLA case or an appellate court. This is the Illinois Supreme Court in a workers' compensation case. So did Dr. Brown testify to a reasonable degree of medical certainty here? If you look at a reasonable degree of medical certainty, Your Honor, it's a standard of 51% or more likely than not. I don't think that that is in support of what we have in workers' compensation cases. I think you're confusing those two concepts. A reasonable degree of medical certainty is required in order to opine that an accident might or could have caused something. That's different than saying that it most likely caused it or was greater than 51% likely caused. It's the degree of certainty in the opinion itself. So it's a separate issue. Well, all I am saying is that while a doctor's testimony that his opinion is given based upon a reasonable degree of medical certainty does lend to the conclusion that that is a non-speculative opinion that he's given, there is no requirement that every doctor's deposition in a work comp case, they have to preface their opinions that they're based upon a reasonable degree of medical certainty so long as there is a sufficient foundation for those opinions. In this particular case, Dr. Brown's opinions, if you look at them in total and not just one after the other, if you look at his final opinion, and that was that based upon the fact that my client never had any problems with his back prior to this accident, that lent to him support for his opinion that this accident was at least a contributing cause to the aggravation of his preexisting condition. Okay, Counselor, your time is up. Thank you. You'll have time to reply. Good afternoon. May it please the Court. Counsel. Theodore Powers on behalf of Seroflow Products. I'm going to just make some comments today as it involves Dr. Brown and his opinions, which I think is probably the primary issue that we're really dealing with here today. Dr. Brown was initially asked by Counsel, Mr. Weir's Counsel, can you render opinion within a reasonable degree of medical certainty? And he didn't answer. So then Counsel then asked him the next standard, which is more likely true than not true. He couldn't answer it. He was asked by Counsel again, more likely true than not true, and he couldn't answer it. We finally get a hypothetical in, which deals with never had back problems before, but Dr. Brown never said, I think, that it's related. The best he could say was that it was possible. It was possible as far as he could go. Now, I asked him on cross-examination. You know, my comment was you can't render opinion here today within a reasonable degree of medical certainty. And he says, correct. So he can't render that opinion. And all he kept saying was it was possible. And at one point he said, you know, I think it was like, you know, his back was so bad, he had stenosis, and that was 90% of the problem. I think maybe 10% was due to the work injury, but I'm speculating. And he said that. He said, I conjecture. He says, everything I'm saying today is basically speculation. That's hard to overcome. That is very difficult when you're trying to establish a causal connection, and especially in light of what we have here in terms of Mr. Weir's back, because he has a really significant lumbar stenosis. It was so severe that Dr. Chabot even testified that regardless if there was no record of any treatment prior to this accident, he would have expected that he would have had back pain or symptoms just because it was so significant at every level. But so you look at why Dr. Brown, why couldn't he render that opinion? Sometimes it happens. You have a doctor who is a treater. In this particular case, I think that it was fairly clear he didn't have any records to review. He didn't know what his treatment was leading up to his treatment two years later. He's got a gentleman who has lumbar stenosis that's extremely severe, that he admitted that any activity would aggravate it. So I think it was difficult for him to opine with any reasonable certainty that his work injury, which he understood was a muscle strain, was going to have an effect upon his underlying stenosis. As he said, when you have the radiculopathy that develops later, that develops because of the stenosis, not because of the back strain. Okay. You pointed out some potential defects, flaws in Brown's testimony, and obviously the commission relied on Chabot and obviously you're going to point to Chabot's testimony as being able to carry the day. And what do you make of this counsel's arguing very vociferously, you can't go along with Chabot because he doesn't even know the standard. We don't have a prevailing factor standard. It could be a cause. It could be any cause. So how do you interpret Chabot's statement and how does that impact on this case, if at all? Well, the statement, I don't think it has any impact on the case because there was no stipulation to his report and he testified. They had the right to cross-examine him about whether his opinion was based upon the correct standard. Is it the prevailing factor standard under Missouri law? Dr. Chabot is from St. Louis. Or are we talking the Illinois standard, which is the sole factor? Right. So he testified and he made it very clear that this accident was not the cause for him needing this surgery. Period. Yep. But I don't think it really played the role of him writing that down. I think it's more of an error or a semantic, but he testified as to what his opinion was and I think we have to apply that. He never mentioned in his testimony the prevailing factor? No. Not in the testimony. Yeah. No, so at the end of the day, we have a gentleman who has a really serious back. Now, he goes to the company doctor. He goes back to regular work within four weeks of the accident and he continues working up until the time he has surgery almost two years later. He's seen about six times, I think, by the company doctor. There is indications of getting better. And then when he's seen at the end of September, this happened in July, end of September, the doctor says, I don't see anything wrong with you. You know, you're done. You're at MMI. He's still seeing his doctor. And the interesting thing is when he's seeing his doctor in October, his family doctor is saying nothing worrisome is going on here. And then we start having gaps. And we have both doctors agreeing through their testimony that his condition was going to progress and get worse. In fact, Dr. Brown said at some point he was going to need to have this surgery. Accident or not, injury or not, he was going to require surgery because it was so bad. I believe that Dr. Brown's opinions are speculative. I don't believe that it's sufficient. I believe also that, you know, the commission, as a fact finder, you know, they have to resolve those conflicts, especially with medical evidence. And they read, you know, the transcripts. They read the opinions of the doctors. And they just found Dr. Brown too speculative. And they thought that Chabot was more credible. They were essentially doing their job, finding that he failed to prove that his injury resulted in his need for that surgery two years later. So we would ask, and by the way, they also awarded permanency for the back strength. So it's not like the commission, when they were doing this assessment, they also looked at the fact that he did have a back injury, and they awarded him permanent partial disability. So we would ask, the court would ask that you approve. Thank you, counsel. Counsel, you may reply. Just briefly. There was no showing that my client had gone back to baseline in this case. This, the appellate court has reversed the commission based on a finding that, under the chain of events theory of causation, showing that the injury produced symptoms, produced the need to have medical treatment,  and never went back to the way the person was before the injury, then that is proof of causation. And that's what we have in this case, Your Honors. We do not have someone who had an asymptomatic lumbar stenosis condition prior to July 18th of 2008. If his back was as bad as Dr. Chabot was convinced it was, then why don't we? This man worked for 30 years. At the time of this accident, he had been a mechanic at Respondent's Place of Business for 30 years, doing this kind of work, which does put strains on the back. And there's no evidence whatsoever from a supervisor saying, oh, he complained about his back all the time, or a coworker, nothing like that. There's the mechanism of injury that was in all of the records, that he had to, he had dropped a plate while he was repairing the equipment, and had to bend into a, into the machine in order to retrieve it. The plate, there's, the plate weighed around 30 to 40 pounds, and so he's bending and lifting, and he feels a pop. And then he has pain. And then he sought treatment at the company doctor. They released him to go back to full-duty work, and he continues to have back pain. And that back pain progresses to the point where he's having ridiculous symptoms.  I think if you read all of Dr. Brown's testimony, particularly on redirect after the, after Mr. Powers asked Dr. Brown if his testimony was speculative, he was asked to assume that since my client didn't have any prior back issues, what does, how does that affect your opinion? And he said, that makes my opinion even stronger, because if he did have prior back strain, then it would be more likely a temporary aggravation as opposed to an aggravation that was a factor in his condition of well-being requiring the surgery. Thank you very much. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It was taken under advisement and a written disposition shall issue.